2023 IL App (2d) 230362-U
No. 2-23-0362
Order filed December 21, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2121 |
| CESAR D. VELAZQUEZ, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering him detained.  Affirmed.

¶ 2   In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), defendant, Cesar D. Velazquez, appeals from the trial court's order granting the State's petition to deny defendant pretrial release and ordering him detained pursuant to Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]  See *Rowe v.*

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today

*Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Defendant argues that the State did not prove by clear and convincing evidence that: (1) the proof is evident or the presumption is great that defendant committed the offenses that qualified him for pretrial detention; (2) defendant poses a real and present threat to the safety of any person or the community, based on specific, articulable facts of the case; (3) no condition or combination of less restrictive conditions can mitigate the real and present threat to the safety of any person or the community, based on specific articulable facts of the case; and (4) no conditions of pretrial release will reasonably ensure defendant's appearance. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4      On October 5, 2023, the State charged defendant with aggravated domestic battery (strangle) (720 ILCS 5/12-3.3(a-5) (West 2022)), a Class 2 felony, alleging that defendant, while committing battery (720 ILCS 5/12-3.2 (West 2022)), knowingly caused bodily harm to Jennifer Ocelotl, a family or household member, in that he intentionally strangled her about the neck by applying pressure on her throat and neck, thereby impeding her normal breathing. It also charged defendant with interfering with reporting of domestic violence (720 ILCS 5/12-3.5(a) (West 2022)), a Class A misdemeanor, alleging that, after having committed domestic violence by slapping, striking, and strangling Ocelotl, defendant knowingly prevented her from calling 911. In a third count, the State charged defendant with domestic battery (bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2022)), a Class A misdemeanor, alleging that he knowingly and without legal justification caused bodily harm to Ocelotl, a family or household member, in that he slapped,

_____

(SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

struck, and strangled her. In a fourth count, the State charged defendant with domestic battery (physical contact) (720 ILCS 5/12-3.2(a)(2) (West 2022)), a Class A misdemeanor, alleging that defendant, knowingly and without legal justification, made physical contact of an insulting nature with Ocelotl, a family or household member, in that he slapped, struck, and strangled her. Finally, as amended, the State charged defendant with aggravated assault (use of deadly weapon) (720 ILCS 5/12-2(c)(1) (West 2022)), a Class A misdemeanor, alleging that defendant, while committing assault (720 ILCS 5/12-1(a) (West 2022)), without lawful authority and while armed with a deadly weapon, a pair of scissors, knowingly raised scissors toward Ocelotl, thereby placing her in reasonable apprehension of receiving a battery. The State alleged that all the charged offenses occurred on or about October 4, 2023.

¶ 5    The police synopsis related that, on October 4, 2023, at 2:18 p.m., West Dundee police officer Fallon was dispatched to 2900 Canterfield Parkway East in response to a distressed female's call. At the scene, Ocelotl approached officers Fallon and Kruse, requesting paramedics and stating that defendant tried to kill her. Fallon observed signs of injury to Ocelotl's face and neck. Ocelotl related that she and defendant had argued about messages he found on her phone and that defendant slapped Ocelotl with an open hand and struck her multiple times when she attempted to take back her phone. Ocelotl was unable to determine how many times or how long she was slapped and struck, because, she stated, they moved around. She also related that she was knocked to the ground multiple times. Further, at some point, defendant, according to Ocelotl, had a pair of black scissors in his hand, moving around the kitchen with her and threatening to kill their cat if Ocelotl did not give him the car keys. Defendant also threatened to kill Ocelotl if she did not give him the car keys and stated that he was going to kill the man she had messaged.

¶ 6    Ocelotl also told Fallon that she saw defendant recording her with his phone while calling her names, and he was on top of her while recording her and strangled her with one hand. Ocelotl was unable to provide specific details concerning the strangulation, according to Fallon. She stated that defendant went to the kitchen and began taking photos of her phone. She then took her phone and ran outside to her vehicle.

¶ 7    Once inside her vehicle, Ocelotl called 911 and hung up when defendant came outside. Defendant struck her again, and they went back inside. Defendant saw Ocelotl call the police and became angry. She stated that he strangled her again with one hand and told her that this was how she was going to die. Ocelotl began to scream, and defendant covered her mouth with his hand. She bit his finger, which, according to Fallon, was consistent with an injury observed on defendant. Oceltol stated that she could not breathe for about two seconds while defendant strangled her and described her pain as 10 out of 10. She believed she was going to die.

¶ 8    Ocelotl also stated that she was struck and slapped while on the stairs that lead up to the apartment. Defendant raised a pair of black scissors like he was going to hurt her with them.

¶ 9    Fallon reported that a blue pair of scissors were in defendant's pocket when he arrived at the residence, and he located a black pair of scissors within the entryway at the bottom of the apartment's stairs. Fallon also related that Ocelotl sustained injuries to her lip, left side of her face, right side of her face, and right side of her neck. Defendant sustained injuries to his chest, abdomen, right ring finger, upper back, left side of his face, and right foot. Defendant's injuries were, according to Fallon, consistent with Ocelotl's statements of self-defense.

¶ 10   On October 5, 2023, the State petitioned to deny defendant pretrial release, alleging first that, on the bases of the charges of aggravated domestic battery (strangulation) and two counts of domestic battery, defendant was charged with forcible felonies or other felonies that involve the

threat of or infliction of great bodily harm or permanent disability or disfigurement and that his pretrial release poses a real and present threat to the safety of any person or the community. 725 ILCS 5/110-6.1(a)(1.5) (West 2022). Second, it asserted that defendant was charged with domestic battery or aggravated domestic battery and his pretrial release posed a real and present threat to the safety of any person or the community. *Id.* § 5/110-6.1(a)(4) (West 2022).

¶ 11 The trial court found that defendant had been arrested without a warrant and that, based on the police synopsis, there was probable cause for his arrest.

¶ 12 Turning to the State's petition, defense counsel argued first that the evidence concerning whether defendant committed the alleged acts was insufficient, because defendant also suffered injuries. Counsel also noted that the police synopsis did not reflect that the officers recorded defendant's version of the events. Defense counsel next proffered that, the day prior to the incident, defendant discovered that Ocelotl had miscarried their child. Ocelotl was drinking and was involved in an intimate relationship with another person. Defendant saw text messages between them and attempted to speak to Ocelotl about the relationship and the recent miscarriage. At this point, according to defense counsel, Ocelotl attacked defendant, getting on top of him and hitting him. She also scratched defendant's face, resulting in injuries reflected in the police synopsis. Addressing Ocelotl's statements regarding the alleged strangulation, counsel argued that the synopsis was confusing because, at one point, Ocelotl stated that she did not know how it happened. Counsel also noted that there was no allegation that defendant prevented Ocelotl from calling 911. Next, addressing defendant's alleged statements that he was going to kill Ocelotl, counsel argued that defendant's actual words were "that's it for you," reflecting that he no longer wanted to be in a relationship with Ocelotl, not to kill her. Similarly, his statement reflected that he wanted to have a conversation with the person with whom Ocelotl was having a relationship.

As to the scissors, counsel argued that defendant had them in his pocket because he was afraid, had been violently attacked, and was afraid Ocelotl might take them and use them on him.

¶ 13    Counsel further related that Ocelotl had recently made threatening statements to defendant, including the day before that she was thinking about pushing him down the stairs.

¶ 14    Counsel noted that defendant had no criminal history, apart from traffic offenses, and did not have a history of violence. The public safety assessment report, which is not contained in the record on appeal, reflected, according to defense counsel, that defendant had no prior violent convictions, prior felony convictions, or prior misdemeanor convictions. He also had zero failures to appear within the past two years and zero older than two years. Defendant has lived in Illinois his entire life, is 24 years old, and has family that resides in this state, including a brother and three aunts. He holds a full-time job at a psychiatry office and two part-time jobs (at Instacart and DoorDash). Counsel argued that, given the support he has, defendant has somewhere to stay in the area while his case is pending and that there are conditions to mitigate any harm to the public, including a bar order to the address, a no contact order, and an order to surrender firearms, ammunition, dangerous weapons, and any FOID card and concealed carry licenses. Counsel also argued that defendant is not a flight risk, and there are conditions to mitigate any risk.

¶ 15    In response, the State argued that defendant should be detained and noted that defendant did not call 911 even though he had a phone; rather, Ocelotl called the police.

¶ 16    The trial court found that defendant was charged with a detainable offenses—aggravated domestic battery (strangulation) and domestic battery—and that the State had established, by clear and convincing evidence, that: (1) the proof was evident or the presumption great that defendant committed detainable offenses (725 ILCS 5/110-6.1(a) (West 2022)); (2) he poses a real and present threat to the physical safety of Ocelotl; and (3) no condition or combination of conditions

could mitigate the real and present threat to the safety of any person (725 ILCS 5/110-10(b) (West 2022)). As to the evidence that defendant committed detainable offenses, the court noted it relied on the verified petition, the proffered evidence from defense counsel, and the synopsis. As to its dangerousness finding, the court noted that it found credible that defendant threatened to kill Ocelotl multiple times and took steps in furtherance of that, including choking her on more than one occasion and threatening her with scissors. As to the proffered evidence concerning Ocelotl's miscarriage, the court found that this supported Ocelotl's version of the events over defendant's version and did not support a finding that Ocelotl had a basis to attack defendant. Next, the court noted that, in determining that the State had established that the proof was evident and presumption great that no condition or combination thereof could mitigate the real and present threat posed by defendant, it found that defendant made multiple threats to kill Ocelotl over messages on a phone and, thus, his anger was such that it did not believe defendant would follow any conditions of pretrial release.

¶ 17     In its written order, the trial court noted that the synopsis provided clear and convincing evidence that defendant committed aggravated domestic battery (strangulation) and domestic battery, detainable offenses, by repeatedly striking and choking Ocelotl. The court also found that the synopsis supported that Ocelotl had injuries consistent with her statements in the synopsis that defendant possessed a pair of scissors, which also corroborated Ocelotl's statement of what occurred. The court also found that defendant posed a real and present threat to the safety of any person, in that he repeatedly threatened to kill Ocelotl and a cat. He also threatened to kill the male who messaged Ocelotl. Defendant, the court further found, acted upon the threat to kill Ocelotl by choking her and threatening to stab her with a pair of scissors. The trial court also found that less restrictive conditions would not assure safety to the community and assure

defendant's appearance in court. Specifically, it determined that neither a no contact nor stay away order would protect Ocelotl from defendant. The court also found that electronic home monitoring (EHM) or GPS would not protect Ocelotl from the real and present threat defendant presented and that defendant displayed by repeatedly attacking Ocelotl and caused the court to believe that nothing could protect her. Finally, the court ordered that defendant have no contact with Ocelotl.

¶ 18    On the same date, defendant filed his notice of appeal, and, on November 22, 2023, the Office of the State Appellate Defender elected to file a notice in lieu of an Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023) memorandum.

¶ 19                                II. ANALYSIS

¶ 20                    A. Pretrial Release Provisions of Code

¶ 21    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, pretrial release may be denied only in certain situations (qualifying offenses). *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or is a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 22    If the trial court finds that the State proved a valid threat to the safety of any person or the community and/or defendant's likely willful flight to avoid prosecution, or defendant's failure to abide by previously issued conditions of pretrial release, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the

safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a).

¶ 23    If the trial court determines that the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(h)(1).

¶ 24    We review under the manifest-weight-of-the-evidence standard the trial court's factual findings regarding whether the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously issued conditions of pretrial release, thereby requiring a modification or revocation of the previously issued conditions of pretrial release. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A decision is against the manifest weight of the evidence where the court's determination is unreasonable. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the trial court's determination is unreasonable. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 25                          B. Commission of Qualifying Offenses

¶ 26    First, defendant argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the charged offenses. Specifically, he asserts that the synopsis reflects that he sustained "vast" injuries as a result of the incident, including injuries to his chest, abdomen, right ring finger, upper back, left side of his

face, and his right foot. All the injuries, he contends, were sustained as a result of Ocelotl's actions. He also notes that, by way of proffer, he stated that Ocelotl attacked him by getting on top of him, scratching at him, and slapping him. Defendant also asserts that Ocelotl made statements that she was thinking of pushing defendant down the stairs.

¶ 27 We conclude that the trial court did not err in determining that the State established, via clear and convincing the evidence,[2] that the proof was evident or the presumption great that defendant committed the qualifying offenses. The evidence at the hearing on the State's petition consisted of the police synopsis, the charging documents, and defendant's criminal history.

¶ 28 Defendant was charged with two qualifying offenses: aggravated domestic battery (strangulation) and two counts of domestic battery (great bodily harm and physical contact). 725 ILCS 5/110-6.1(a)(4) (West 2022). As charged, a person commits aggravated domestic battery when, in committing a domestic battery, he or she strangles another individual. "Strangle" is defined as "intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." 720 ILCS 5/12-3.3(a-5) (West 2022). A person commits domestic battery when he or she knowingly, without legal justification, by any means causes bodily harm to any family or household member or makes physical contact of an insulting or provoking nature with any family or household member. *Id.* § 12-3.2(a). Battery is defined as knowingly, without legal

---

[2]Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

justification, by any means causing bodily harm to an individual or making physical contact of an insulting or provoking nature with an individual. *Id.* § 5/12-3(a).

¶ 29 The police synopsis related that Ocelotl contacted 911 and that, when Officer Fallon arrived at the scene, he observed signs of injury to Ocelotl's face and neck. She reported to him that defendant tried to kill her after they argued about messages he had found on her phone to another man. Ocelotl also related that defendant slapped and struck her multiple times, and he knocked her to the ground multiple times. At some point, defendant had a pair of black scissors in his hand, threatening to kill Ocelotl, their cat, and the man she messaged, if she did not give him the car keys. Ocelotl also stated that defendant tried twice to strangle her.

¶ 30 In determining that the State had established by clear and convincing evidence that defendant committed the qualifying offenses of aggravated domestic battery (strangulation) and domestic battery, the trial court rejected defendant's argument that the evidence of injuries he sustained reflected that, after they argued about her alleged relationship with another man and her recent miscarriage, Ocelotl was the aggressor. The court noted that the evidence did not support a finding that Ocelotl had a basis to attack defendant.

¶ 31 We conclude that the trial court did not err in determining that Ocelotl's version of the events was more credible than defendant's version and further finding that the proof was evident or the presumption great that defendant committed the qualifying offenses. As the State noted, Ocelotl, not defendant, called 911 after the incident, which reasonably reflects that she was the victim. She related that defendant twice attempted to strangle her and that he slapped and struck her, evidence of which was corroborated by Fallon's observations of signs of injury to Ocelotl's lips, face, and neck and his opinion that defendant's injuries were consistent with Ocelotl's

statements of self-defense. Further, Fallon located a pair of black scissors in the apartment entryway and a pair of blue scissors in defendant's pocket.

¶ 32                                    C. Real and Present Threat

¶ 33    Second, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that he posed a real and present threat to the safety of any person or the community, based on the specific, articulable facts of the case. Specifically, defendant asserts that, apart from traffic offenses, he has a very limited criminal history, he does not have any history that is relevant to the charged offenses, and, pursuant to the public safety report, he has no prior violent, misdemeanor, or felony convictions.

¶ 34    Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that the defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. *Id.* § 110-6.1(g).

¶ 35    In finding that the State established that the proof is evident and the presumption great that defendant poses a real and present threat to any person or the community, the trial court determined that defendant threatened to kill Ocelotl multiple times and engaged in acts toward that goal, including choking her more than once and threatening her with scissors. We conclude that the trial court did not err in finding that the State established dangerousness. Defendant focuses only on his lack of significant criminal history and ignores the facts of this case. The Code, as noted, requires the trial court to consider all relevant factors, which the court did here. Accordingly, we reject defendant's argument.

¶ 36                    D. Feasibility of Less Restrictive Conditions

¶ 37    Defendant's third and fourth arguments address the feasibility of less restrictive conditions.

¶ 38    Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a)(1)-(6). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to the safety of any person or the community that would be posed by the defendant's release; (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release; and (6) when a person is charged with, as relevant here, domestic battery, the court may consider certain additional factors. *Id.* The additional factors a court may consider when a defendant is charged with domestic battery include: (1) whether the alleged incident involved harassment or

abuse as defined in the domestic violence statute; (2) whether the defendant has a history of domestic violence or a history of other criminal acts; (3) the defendant's mental health; (4) whether the defendant has a history of violating court orders; (5) whether the defendant has been or is potentially a threat to any other person; (6) whether the defendant has access to deadly weapons or has a history of using deadly weapons; (7) whether the defendant has a history of abusing alcohol or any controlled substance; (8) the severity of the alleged incident; (9) whether a separation from the victim of abuse or a termination of the relationship between them has recently occurred or is pending; (10) whether the defendant has exhibited obsessive or controlling behaviors toward the victim; (11) whether the defendant has expressed suicidal or homicidal ideations; and (12) any other factors the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior. *Id.* § 110-5(a)(6).

¶ 39                                   1. Threat to Any Person

¶ 40    Defendant argues that the State failed to meet its burden of proving, by clear and convincing evidence, that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case. Specifically, defendant contends that the following conditions could mitigate the real and present threat to the safety of any persons, including: having no contact with Ocelotl; an order barring him from Ocelotl's address; and turning in all firearms and FOID cards. He also adds that GPS monitoring could ensure that he does not return to Ocelotl's address. Defendant further notes that he has other addresses where he could live while his case is pending, he has family in the area, one full-time job, and two part-time jobs. Defendant also notes that he has no failures to appear.

¶ 41    The trial court found that the severity of defendant's response to alleged text messages reflected that, even if he was ordered to stay away from Ocelotl, he was unlikely to do so. Further, the court noted that defendant made multiple threats to Ocelotl, which reflected to the court that defendant would not follow any condition or combination of conditions of pretrial release.

¶ 42    We conclude that the trial court did not err in finding that no condition or combination of conditions would mitigate the real and present threat defendant poses. It was reasonable for the court to find that, based on the severity of the incident, no condition or conditions could mitigate the threat he poses. Defendant has no significant criminal history but reacted to alleged text messages with threats to kill and two attempts to strangle the victim, including with both his hands and scissors. Under these circumstances, the court's assessment was reasonable.

¶ 43                    2. Ensuring Appearance

¶ 44    Defendant's final argument is that the trial court erred in its determination that no condition or combination of conditions would reasonably ensure defendant's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. Specifically, defendant contends that he has ties to the community, several jobs, and no failures to appear. He also notes that he has no criminal history and argues that detention would not be necessary to ensure his appearance in court or to prevent additional charges.

¶ 45    For the same reasons we found unavailing defendant's argument concerning the threat to Ocelotl, we reject this argument. The severity of defendant's actions reasonably showed that no condition or combination of conditions would ensure defendant's appearance or prevent him from being charged with a subsequent offense.

¶ 46                    II. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 48    Affirmed.